**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------------------X
RONIT MENASHE and AUDREY QUOCK,      :
           :
           **Plaintiffs,**      :   **05 Civ. 239 (HB)**
           :
          **- v-**      :   <u>**OPINION & ORDER**</u>
           :
**V SECRET CATALOGUE, INC.,**      :
**VICTORIA'S SECRET STORES, INC.,**      :
**INTIMATE BEAUTY CORPORATION,**      :
*d/b/a Victoria's Secret Beauty*,      :
**VICTORIA'S SECRET DIRECT, LLC,**      :
           :
          **Defendants.**      :
-------------------------------------------------------------------------------X

**Hon. HAROLD BAER, Jr., District Judge*:**

On January 11, 2005, Plaintiffs, Ronit Menashe ("Menashe") and Audrey Quock

("Quock," collectively "Plaintiffs"), filed the instant action against Defendants, V Secret

Catalogue, Inc., Victoria's Secret Stores, Inc., Intimate Beauty Corporation, and Victoria's

Secret Direct, LLC (collectively, "Victoria's Secret"). On April 20, 2005, Victoria's Secret

moved to dismiss the Complaint pursuant to Rule 12(b)(6) and 12(b)(1) of the Federal Rules of

Civil Procedure and the matter was <u>sub judice</u> following oral argument on June 29, 2005. For

the reasons set forth below, Victoria's Secret's motion to dismiss is DENIED.

## I.   <u>BACKGROUND</u>

### A.   Parties

Quock, a fashion model and resident of New York, New York, and Menashe, a publicist

and resident of Los Angeles, California, are the owners and operators of "SEXY LITTLE

THING, SEXY LITTLE THINGS," a "proposed business venture for the production, sale, and

distribution of women's underwear and lingerie." (Am. Compl. ¶¶ 2-3, 8.)

Victoria's Secret is comprised of V Secret Catalogue Inc., Victoria's Secret Stores Inc.,

and Victoria's Secret Direct LLC, which are incorporated in the State of Delaware with their

principal place of business in the State of Ohio, as well as Intimate Beauty Corporation d/b/a as

Victoria's Secret Beauty, which is incorporated in the State of Delaware, with its principal place

of business in New York, New York. (Am. Compl. ¶¶ 4-5.) Victoria's Secret is the "owner and

---

* Alissa Hazan, a summer 2005 intern in my Chambers, and currently a second year law student at New York University School of Law, provided substantial assistance in the research and drafting of this Opinion.

operator of over 1,000 Victoria's Secret lingerie and beauty stores located throughout the United States as well as the well-known Victoria's Secret catalog and internet website www.victoriassecret.com."  (Cease and Desist Letter.)

**B.     Factual History**

    1.     <u>Plaintiffs' Business Venture</u>

On or about June 1, 2004, Plaintiffs "agreed on a proposed business venture for the production, sale, and distribution of women's underwear and lingerie."  (Am. Compl. at ¶ 8.)  On or about July 15, 2004, Plaintiffs chose the name "SEXY LITTLE THING, SEXY LITTLE THINGS" (the "Mark") as the trademark for their underwear/lingerie line.  (Am. Compl. at ¶ 9.)

Following a thorough Internet search, in late August or early September 2004, Plaintiffs "checked with the United States Patent and Trademark Office ("U.S.P.T.O.") as to the availability of said Mark.  .  .  ."  (Am. Compl. ¶ 14.)[1]  On September 13, 2004, Plaintiffs filed an "intent-to-use" (herein, "intent to use" or "ITU") application, No. 78/482,883 with the U.S.P.T.O.  (Am. Compl. ¶ 12.)

In the months both prior (as early as June 1, 2004) and subsequent to the submission of the ITU application, Plaintiffs conducted various activities in furtherance of their business venture.  (Am. Compl. ¶ 15.)  For example, on August 31, 2004, Plaintiffs registered the Internet domain name www.sexylittlethings.com and retained a web-designer.  (Am. Compl. ¶ 11.)  Plaintiffs also designed the lingerie that they intended to market, and had foreign manufacturers in Shanghai, China produce four hundred samples of the lingerie labeled with the phrase "SEXY LITTLE THINGS."  (Am. Compl. ¶ 16.)  Plaintiffs publicly displayed the sample underwear via a fashion shoot/interview with a magazine, in which Quock and three independent models were featured.  (Am. Compl. ¶¶ 17, 18.)  In or before September 2004, Plaintiffs received eight final "silk screen" design pieces from their Chinese manufacturer.  These silkscreen designs were the "finals  .  .  . or 'originals' from which all subsequent articles of underwear would be produced." (Am. Compl. ¶ 19.)

    2.     <u>Victoria's Secret's "Cease and Desist Letter"</u>

On November 11, 2004, Victoria's Secret filed with the U.S.P.T.O. application No. 78/515,089, for the trademark, "SEXY LITTLE THINGS."  (Am. Compl. ¶ 21.)  The application cited July 28, 2004 as the date on which Victoria's Secret first used the phrase in commerce.  <u>Id</u>. However, the nature and extent of Victoria's Secret's use, if any, is vigorously contested by the

---

[1] Plaintiffs fail to specify what, if any, response they received from the U.S.P.T.O.

parties.

On November 15, 2004, counsel for Victoria's Secret, Frank Colucci, mailed a "cease and desist" letter to Plaintiffs, which they received the following day. (Am. Compl. ¶¶ 22-23.) The letter declared that Victoria's Secret had used the Mark "SEXY LITTLE THINGS" on a line of its lingerie and boutique items prior to Plaintiffs' September 2004 application. (Am. Compl., Ex. A, Ltr., dated Nov. 15, 2004, from Colucci, Att'y for Def., to Menashe & Quock Plaintiffs.) (herein, "Cease and Desist Letter") Enclosed with the letter, in support of its claim, were a sample clothing label, a photograph of the in-store sign that read "SEXY LITTLE THINGS," and copies of pages from Victoria's Secret Resort 2005 Catalogue that featured the Mark. Id.

The cease and desist letter also alleged the Plaintiffs' Mark was "confusingly similar" to Victoria's Secret's Mark and, therefore, such continued use of the Mark:

> [C]onstitute[s] trademark infringement in violation of the United States trademark law, commonly referred to as the Lanham Act, 15 U.S.C. § 1051, et. seq. . . . [and] such use would also constitute false designations of origin and false representations in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), as well as common law trademark, and unfair competition and may subject you to liability to Victoria's Secret for an injunction, profits, damages, and attorneys' fees and costs.

(Cease and Desist Letter.) Victoria's Secret insisted that Plaintiffs promptly "cease and desist" from any further use of the "SEXY LITTLE THING, SEXY LITTLE THINGS" Mark, abandon their trademark application for registration, and transfer the domain name www.sexylittlethings.com to Victoria's Secret. Id.

According to the Plaintiffs, however, the assertions made in the cease and desist letter are directly contradicted by assertions made by two of Victoria's Secret's officers. On October 20, 2004, at a Victoria's Secret shareholder meeting, Grace Nichols, President and CEO of Victoria's Secret Stores, Inc., stated that:

> The SEXY LITTLE THINGS displays were in stores for the first time that week and so 'there isn't really much to tell'.

(Decl. Menashe, Att'y for Pl, at ¶14) (quoting Menashe Decl., Ex. 3, Victoria's Secret 10/20/2004 Shareholder Meeting Transcript). According to Plaintiffs, this statement directly contradicts Victoria Secret's assertion that they utilized the Mark in commerce prior to Plaintiffs' ITU application.

Plaintiffs also maintain that Victoria's Secret's use of the Mark in their catalogue prior to Plaintiffs' submission of their ITU application is dubious both because of the ambiguity

surrounding the alleged mailing date of the catalogue, as well as the nature of the use of the Mark. (Aff. Menashe, Att'y for Pl., at ¶¶ 16-21.) Plaintiffs highlight the fact that Victoria's Secret allegedly mailed the catalogue on September 9, 2004, at most four days prior to Plaintiffs' September 13, 2004 ITU application. Plaintiffs also maintain "Defendants' use of the Mark in their catalogue does not meet the requirement" that a mark "must be used in such a manner that its nature and function as a trademark are readily apparent and recognizable without extended analysis or research and certainly without legal opinion." (Menashe Aff. ¶ 20.) Further, Plaintiffs argue that "[t]o be used as a trademark, a mark must be affixed to the goods or closely associated with them, [and] [Victoria's Secret] use of the [M]ark in their catalogue does neither." (Aff. Menashe, Att'y for Pl., at ¶ 21.)

Nevertheless, upon receipt of the "cease and desist" letter, Plaintiffs investigated Victoria's Secret's trademark claims and concluded that Victoria's Secret's never used the Mark in commerce prior to Plaintiffs' September 2004 U.S.P.T.O application or, at least, the use was "so minimal as to be virtually undetectable." (Am. Compl. ¶ 35.) However, as a consequence of Victoria's Secret's letter, the Plaintiffs allege that they have been seriously damaged. They halted all activities with advertisers, producers, distributors, retailers, financial backers, and the media, and have discontinue production, marketing, and promotional use of which were well underway at the time of the cease and desist letter. (Am. Compl. ¶¶ 38-39.)

**C.     Procedural History**

On January 11, 2005, Plaintiffs filed the instant action for declaratory relief and, on March 14, 2005, filed the instant Amended Complaint. (Dckt. 11.) Plaintiffs enumerate various causes of action in their Amended Complaint and seek equitable relief, e.g., a declaratory judgment that Plaintiffs' use of the Mark "SEXY LITTLE THINGS" and their registration and use of the domain name, www.sexylittlethings.com, does not violate any of Victoria's Secret's rights under: (1) the Lanham Act, 15 U.S.C. § 1051 et seq., including 15 U.S.C § 1125(a) (Am. Compl. ¶ 41); (2) the common law of trademark and unfair competition (Am. Compl. ¶ 43); and, (3) the Anticybersquatting Consumer Protection Act (ACPA), 15 U.S.C. § 1125(d) (Am. Compl. ¶ 49). Plaintiffs' also seek an award of (4) damages sustained as a consequence of Victoria's Secret's tortious misrepresentation (Am. Compl. ¶ 59), (5) punitive damages for such misrepresentation (Am. Compl. ¶ 62), and, (6) attorney's fees and expenses expended in connection with this litigation. (Am. Compl. ¶ 64.)

In response to the Amended Complaint, Victoria's Secret filed a motion to dismiss or, in

the alternative, summary judgment on April 20, 2005. (Dckt. 14) Victoria's Secret argues that this Court lacked subject matter jurisdiction over Plaintiffs' claims, and that the Plaintiffs failed to state any claims upon which relief may be granted, or, in the alternative, that no material issue of fact exists.

## II. <u>STANDARD OF REVIEW</u>

**1. Federal Rule of Civil Procedure 12(b)(1)**

A motion to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure ("Rule 12(b)(1)") challenges a court's statutory or constitutional power to adjudicate a case and "typically . . . alleges that the federal court lacks either federal question or diversity jurisdiction over the action." <u>Leyse v. Domino's Pizza LLC</u>, No. 04 Civ. 2411, 2004 WL 1900328, at *1 (S.D.N.Y. Aug. 24, 2004) (Baer, J.) (citation omitted). The Court in a determination of a motion to dismiss for lack of subject matter jurisdiction must construe the complaint liberally and in conformity with the principle set out in Rule 8(f) of the Federal Rules of Civil Procedure. <u>Id.</u>, 2004 WL 1900328, at *1; <u>see also</u> <u>In re Vivendi Universal, S.A.</u>, No. 02 Civ. 5571, 2003 WL 22489764, at *2 (S.D.N.Y. Nov. 3, 2003) (Baer, J.); <u>Goel v. U.S. Dept. of Justice</u>, No. 03 Civ. 579, 2003 WL 22047877, *2 (S.D.N.Y. Aug. 29, 2003) (Baer, J.). Once challenged, the burden of establishing a federal court's subject matter jurisdiction rests on the party asserting jurisdiction. <u>See</u> <u>Luckett v. Bure</u>, 290 F.3d 493, 497-98 (2nd Cir. 2002); <u>Makarova v. United States</u>, 201 F.3d 110, 113 (2nd Cir. 2000); <u>see also</u> <u>Thomson v. Gaskill</u>, 315 U.S. 442, 446 (1942)

**2. Federal Rule of Civil Procedure 12(b)(6)**

When ruling on a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must construe all factual allegations in the complaint in favor of the non-moving party. <u>See</u> <u>Krimstock v. Kelly</u>, 306 F.3d 40, 47 - 48 (2d Cir. 2002). The Court's consideration is limited to facts stated on the face of the complaint and in documents appended to the complaint or incorporated in the complaint by reference, as well as to matters of which judicial notice may be taken. <u>See</u> <u>Allen v. WestPoint-Pepperell, Inc.</u>, 945 F.2d 40, 44 (2d Cir. 1991). The complaint should not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." <u>Shakur v. Selsky</u>, 391 F.3d 106, 112 (2d Cir. 2004) (<u>quoting</u> <u>Conley v. Gibson</u>, 355 U.S. 41, 45 - 46 (1957)).

# III.    DISCUSSION

Victoria's Secret moves to dismiss the Amended Complaint for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), claiming there is no federal question presented since the Mark was neither used in commerce as defined under the Lanham Act nor is there an actual case or controversy.  Second, assuming that this Court has subject matter jurisdiction and all of Plaintiffs' allegations are true, the Amended Complaint fails to state a claim upon which relief may be granted.  Third, even if the Plaintiffs' adequately alleged a viable claim, there are no issues of material fact and summary judgment is appropriate.

## 1.  Subject Matter Jurisdiction

It is well settled that "the federal courts are forbidden by Article III of the Constitution from giving advisory opinions."  Boston Firefighters Union Local 718 v. Boston Chap. NAACP, Inc., 468 U.S. 1206, 1211(1984); see Aetna Life Ins. Co. v. Haworth, 300 U.S. 227 (1937).  In Starter Corp. v. Converse Inc., 84 F.3d 592 (2d Cir. 1996), the Second Circuit articulated the standard a court should apply when determining whether a claim for a declaration of trademark rights presents "an actual case or controversy" so as to avoid the prohibition:

> In a declaratory judgment action involving trademarks, the test for an 'actual case or controversy' has two prongs, both of which must be satisfied in order to establish declaratory judgment jurisdiction: (1) has the defendant's conduct created a real and reasonable apprehension of liability on the part of the plaintiff, and (2) has the plaintiff engaged in a course of conduct which has brought it into adversarial conflict with the defendant.

Starter Corp., 84 F.3d at 595 (citation omitted).  According to the Second Circuit, "the finding of an actual controversy should be determined with some liberality" but "the most liberal interpretation of justiciability will not admit to an active controversy in the absence of either some imminent infringing conduct or some assertion of the same."  Id. at 596; Windsurfing Int'l, Inc. v. AMF, Inc., 828 F.2d at 758 (Fed. Cir. 1987) (holding that courts lack the authority to issue advisory opinions in response to a party's position that "[w]e would like to use the mark, but before we do, we want a court to say we may do so safely.");  see Baltimore Luggage Co. v. Samsonite Corp., 727 F. Supp. 202 (D. Md. 1989).

First, a plaintiff must present evidence of a real and reasonable threat of liability.  Plaintiff may include evidence that it is "seeking a declaration that it is free to use a mark without incurring liability for infringement" or may demonstrate the threat of an actual suit.  GMA Accessories, Inc. v. Idea Nuova, Inc., 157 F. Supp. 2d 234, 244 (S.D.N.Y. 2000) (citations

omitted).  Oft times, "an indirect threat of suit can be sufficient to satisfy the justiciable controversy requirement."  <u>Am. Pioneer Tours, Inc. v. Suntrek Tours, Ltd.</u>, No. 97 Civ. 6220, 1998 WL 60944, *3 (S.D.N.Y. 1998) (<u>citing</u> to <u>Muller v. Olin Mathieson Chem. Corp.</u>, 404 F.2d 501, 504 (2d Cir. 1968) ("holding that justiciable controversy exists in context of patent dispute if the defendant has threatened the plaintiff directly or indirectly with a patent suit");

 Here, Victoria's Secret's "cease and desist" letter to Plaintiffs, which demanded they discontinue all activities related to the Mark, posed significantly more than an "indirect threat of suit."  <u>Id.</u>  The letter asserts in pertinent part that:

> [Y]our [M]ark [] is confusingly similar to Victoria's Secrets' [M]ark and, if used, would constitute trademark infringement  .  .  . [and] false designations of origin and false representations in violation of  .  .  .  the Lanham Act  .  .  .  as well as common law trademark, and unfair competition and may subject you to liability to Victoria's Secret for an injunction, profits, damages, and attorneys' fees and costs.

(Cease and Desist Letter)  This language clearly constitutes an "unambiguous communication" of Victoria's Secret's "intent to bring an infringement suit" should Plaintiffs proceed with their plans to produce and market a line of "SEXY LITTLE THINGS."  Thus, the first prong is satisfied.

 Pursuant to <u>Starter</u> and its progeny, a plaintiff must also demonstrate "a definite intent and apparent ability to commence use of the mark[ ]."  <u>GMA Accessories</u>, 157 F. Supp. 2d at 244 (citation omitted); <u>see</u> <u>Gianni Sport Ltd. v. Metallica</u>, No. 00 Civ. 0937, 2000 WL 1773511, at *3 (S.D.N.Y. Dec. 4, 2000).  This standard is intended to "prevent parties with merely a vague and unspecific desire to use a mark from seeking an opinion on hypothetical facts."  <u>Id.</u>, 2000 WL 1773511, at *3 (citation omitted).  To satisfy the second prong of <u>Starter</u> and demonstrate "intent" and "ability" to use the mark, plaintiffs typically presents evidence of substantial financial expenditures or efforts to develop its product.  <u>O Zon Inc. v. Charles</u>, 272 F. Supp. 2d 307, 312 (S.D.N.Y. 2003) (i.e., the "construction of a plant to manufacture its [ ] product.").  Conversely, if the plaintiff demonstrates only "a vague or general desire to use its [Mark]" and has failed to engage in any kind of tangible steps toward product launch, <u>Starter</u> dictates that the case fails to present an actual case or controversy and must be dismissed.  <u>Starter</u>, 84 F.3d at 596 (<u>citing</u> to <u>Arrowhead Indust. Water, Inc. v. Ecolochem, Inc.</u>, 846 F.2d 731 (Fed. Cir. 1988)); <u>see also</u> <u>GMA Accessories</u>, 157 F. Supp. 2d at 244.

Here, Victoria Secret's contention that Plaintiffs have failed to take the necessary steps required by Starter towards using their Mark is belied by the facts and contradicted by the law. Plaintiffs have engaged in several costly activities in furtherance of their business venture that are equal to, if not more substantial than, those completed by the plaintiff in Starter, 84 F.3d at 596. Plaintiffs' actions include, but are not limited to, the registration of the domain name www.sexylittlethings.com, the retainer of a web-designer, and the filing of an ITU application with the U.S.P.T.O for registration of the Mark. (Am. Compl. ¶¶ 11-12.) In addition, Plaintiffs have more than "attempted to find a manufacturing partner," Starter, 84 F.3d at 596, they have already paid for the production of and received four hundred samples of their product, as well as eight final articles that would serve as prototypes and have engaged in activities including interviews and photo shoots to promote their lingerie line. (Am. Compl. ¶¶ 16-19.) Alone, each of these acts arguably disprove Victoria's Secret's contention that Plaintiffs have only "a vague or general desire" to use its Mark, and combined Plaintiffs have invested a "significant amount of time and money" into their project. Starter, 84 F.3d at 596. Plaintiffs have clearly demonstrated "substantial steps" towards a launch of their lingerie line and "meaningful preparation" toward production as required by the case law.

Accordingly, pursuant to Starter and its progeny, Plaintiffs have met the "actual case or controversy" standard and, therefore, Victoria's Secret's motion to dismiss is DENIED.

## 2.    Availability of Relief

Alternatively, Victoria's Secret argues that it began to use the Mark in its retail stores and catalogue prior to Plaintiffs' filing of their ITU application on September 13, 2004 and, therefore, Plaintiffs are not entitled to the declaratory judgment they seek. Plaintiffs argue that its ITU application demonstrates its priority in use of the Mark.

"Use it or lose it" is a fundamental precept of trademark law. Capitol Records, Inc. v. Naxos of Am., Inc., 262 F.Supp.2d 204, 211 (S.D.N.Y. 2003); Holiday Inn v. Holiday Inns, Inc., 534 F.2d 312 (C.C.P.A. 1976). There is, however, one situation where trademark rights may predate actual use: the intent-to-use or ITU application. Prior to the enactment of the Trademark Law Revision Act of 1988 ("TLRA"), Pub. L. No. 100-667, 102 Stat. 3935 (1988), to register for a trademark, an applicant was required to demonstrate "commercial use."[2] The TLRA

---

[2] See Park 'N Fly, Inc. v. Dollar Park and Fly, Inc., 469 U.S. 189, 206 - 7 (1985) ("Section 2 of the Lanham Act plainly prohibits the registration of such a mark unless the applicant proves to the Commissioner of the Patent and Trademark Office that the mark has become distinctive of the applicant's goods in commerce, or to use the accepted

fundamentally altered the trademark landscape when it permitted a federal trademark registration applicant to apply for a trademark without having demonstrated use of the mark either in ordinary trade or in commerce, but merely the bona fide intention, under circumstances showing the good faith of such person, to use the mark in commerce. See 15 U.S.C. § 1051(b) (2002); see also In re Rath, 402 F.3d 1207, 1211 (Fed. Cir. 2005). As such, if, and only if, an applicant completes the registration process and the mark is registered, the applicant will then be granted the constructive use date retroactive to the ITU filing date. 15 U.S.C. § 1051(c) (2000).

The Second Circuit first interpreted how an applicants' rights are effected by the filing of an ITU application in WarnerVision Entm't Inc. v. Empire of Carolina, Inc. ("WarnerVision"), 101 F.3d 259, 260 (2d Cir. 1996).[3] In WarnerVision, the plaintiff, WarnerVision, commenced an action against Empire for trademark infringement. Id. Empire maintained that its predecessor-in-interest, TLV, filed an ITU application on September 23, 1994 that established priority and protected Empire. This Court disagreed, rejected Empire's reliance on its ITU application, and granted the injunction in Warnervision's favor. 915 F. Supp. at 645. I concluded that since WarnerVision was the party that used the mark "in commerce" first, WarnerVision was the priority applicant and entitled to preliminary relief. 915 F. Supp. at 645.[4]

The Second Circuit reversed my decision to enjoin Empire from perfecting its trademark application. 101 F.3d at 259. To do otherwise, the Second Circuit reasoned, would prevent an ITU applicant "from ever achieving use, registration and priority and would thus effectively and permanently terminate its rights as the holder of the ITU application." Id. at 260. According to the Second Circuit, the purpose of the TLRA would be defeated if Empire was denied the protection afforded by the ITU since the idea behind the ITU was to save the applicants place in line. Id. at 261 (citing to S.Rep. No. 515, 100th Cong., 2d Sess. 30 (1988)).

However, the ITU applicant's priority is not unconditional. In WarnerVision, Empire was not seeking "affirmative or offensive relief" against the plaintiff, but rather simply asserted

---

[3] shorthand, that it has acquired a secondary meaning."); see also Int'l Mobile Mach. Corp. v. Int'l Tel. & Tel. Corp., 800 F.2d 1118 (Fed. Cir. 1986).

[3] See also WarnerVision Entm't Inc. v. Empire of Carolina Inc., 915 F. Supp. 639 (S.D.N.Y. 1996) (district court grant of preliminary injunction); WarnerVision Entm't Inc. v. Empire of Carolina Inc., 919 F. Supp. 717 (S.D.N.Y. 1996) (denial of defendants' motion for reconsideration and stay of the preliminary injunction).

[4] The Lanham Act defines "use in commerce" as "the bona fide use of a mark in the ordinary course of trade, and not made merely to reserve a mark." Allard Enter., Inc. v. Advanced Programming Res., Inc., 146 F.3d 350, 357 (6th Cir. 1998) (citing 15 U.S.C. § 1127). According to the U.S.P.T.O., "the purpose of the amendment was to eliminate token use as a basis for registration, and that the new, stricter standard contemplates instead commercial use of the type common to the particular industry in question." Adver. to Women, Inc. v. Gianni Versace S.P.A., No. 98 Civ. 1553, 2000 WL 1230461, at *4 (N.D.Ill. Aug. 24, 2000) (citing to Paramount Pictures Corp. v. White, 31 U.S.P.Q. 2d 1768, 1774 (T.T.A.B. 1994), aff'd 108 F.3d 1392 (Fed. Cir. 1997) (Table)).

the ITU as "a defense to Warnervision's efforts to prevent it from completing the ITU registration process," not dissimilar from Plaintiffs' position here. Id. at 261. As such, the holding in WarnerVision has been limited to those parties seeking protection from an intervening user who is not content merely to oppose the ITU application but seeks preliminary or permanent injunctive relief or, in this case a dismissal of the Complaint, foreclosing the applicant's use of the mark based on an alleged earlier use.

The Second Circuit's decision in WarnerVision is limited to fact patterns that can be construed as defensive. Here, rather than wait for Victoria's Secret to file an action against Plaintiffs for preliminary or permanent injunction (interestingly no such application has been made by this Defendant), Plaintiffs preemptively filed an action for declaratory judgment. Plaintiffs do not seek "affirmative or offensive relief" against Victoria's Secret, rather their action merely attempts to protect them from Victoria's Secret's "efforts to prevent [Plaintiffs] from completing the ITU registration process." Id. at 261. Given the purpose of an ITU application, to allow a party time to make the use necessary for registration, buttressed here by its earlier filing, applicants such as Plaintiffs are afforded the opportunity to make such use. See Id. at 262.

3. **Issues of Material Fact**

Victoria's Secret also moved for summary judgment. Summary judgment is inappropriate here, as the nonmoving party has had no opportunity for discovery and lacked adequate notice of the Defendants' motion. See Masters v. Wilhelmina Model Agency, Inc., No. 02 Civ. 4911, 2003 WL 145556, at *5 (S.D.N.Y. Jan. 17, 2003) (Baer, J.); In re European Rail Pass Antitrust Litig. 166 F. Supp. 2d 836, 844 (S.D.N.Y. 2001). In any event, I am persuaded from the record in its present form that material issues of fact abound and summary judgment, if it could be resolved now, which it cannot, would be denied.

## IV.    Conclusion

For the reasons set forth above, Victoria's Secret's motion to dismiss the Complaint is DENIED. The Clerk of Court is instructed to CLOSE this motion and REMOVE it from my docket.

**IT IS SO ORDERED.**
**New York, New York**
**July    2005**

_____
**U.S.D.J.**

10